## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Sandra K. Fiecke-Stifter and the Estate of Doris M. Fasching by and through Personal Representative Sandra Fiecke-Stifter, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MidCountry Bank and Taft Stettinius & Hollister LLP,<br><br>Defendants. | Court File No. 22-cv-03056-ECT-DTS<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

## <u>INTRODUCTION</u>

This matter concerns the nonjudicial foreclosure of a mortgage on real property located at 722 Arizona Street Northwest, Hutchinson, Minnesota ("Property") resulting from various payment defaults. Harold and Doris Fasching were the borrowers under the operative loan documents and MidCountry Bank ("MidCountry") was the lender. Harold predeceased Doris, who died on September 21, 2021. From October through December 2021, the note and mortgage were materially breached as a result of untimely, incomplete, and/or missed monthly payments. MidCountry terminated and accelerated the mortgage debt for these non-payment defaults and not under the due-on-sale clause related to Doris' death. After terminating and accelerating the note and mortgage for these payment defaults, MidCountry retained Taft Stettinius & Hollister LLP ("Taft") to complete a nonjudicial foreclosure of the Property. The Property was sold at a sheriff's sale on April

7, 2022, after which Doris's daughter, Sandra K. Fiecke-Stifter ("Fiecke-Stifter"), redeemed the property.

Fiecke-Stifter commenced this lawsuit against MidCountry and Taft to challenge the foreclosure. She alleges that MidCountry breached its obligations under the loan documents and violated the Truth in Lending Act ("TILA"), and Taft violated the Fair Debt Collection Practices Act ("FDCPA") by representing MidCountry in the foreclosure. As a matter of law, the claims in the Complaint are legally meritless.

No Breach of Contract (Count I). Plaintiffs' claim that MidCountry breached the note and mortgage by placing the note in default and foreclosing on the mortgage is deficient as a matter of law for multiple equally-dispositive reasons. As a threshold matter, Plaintiffs cannot pursue a private right of action under the Garn-St. Germain Depository Institutions Act ( "Act"), which limits the enforcement of due-on-sale clauses based on defaults for transfers of real property to relatives upon a borrower's death, because the foreclosure has been completed (and Fiecke-Stifter redeemed). The Complaint's remaining breach allegations fail on their face: (1) regardless of the "due on sale" clause, MidCountry had several, independent justifications for terminating and accelerating for repeated payment defaults; (2) the note's plain and unambiguous provisions preclude any allegation that MidCountry's receipt of untimely and partial payments prior to and after termination/acceleration "waived" its right to pursue a default; (3) no note provision prohibited MidCountry from returning payments made after termination; and (4) no purported TILA violation can be pursued via a breach of contract claim.

No TILA Violation (Count II).  Section 1639f(a) generally requires a mortgage servicer to credit consumer account payments "as of the date of receipt."  This is to prevent a lender from delaying the "date of receipt" until a later date to incur additional late fees.  That is not what happened here.  While the Complaint concedes that MidCountry timely credited payments when received, Plaintiffs try to concoct a claim that MidCountry's return of payments made after note termination and acceleration somehow violated TILA.  Not so.  Because the Complaint does not allege that MidCountry delayed crediting payments to incur additional late fees, no TILA violation occurred as a matter of law.

No FDCPA Violation (Count III).  The vast majority of the FDCPA does not apply to Taft because its actions on behalf of MidCountry were to enforce the bank's security interest.  And even for the limited FDCPA provisions that apply to Taft's actions, there was no FDCPA violation as a matter of law for the nonjudicial foreclosure because (1) MidCountry had a "present right of possession" in the Property stemming from the note and mortgage default, (2) MidCountry intended to and did foreclose its security interest in the Property, and (3) the Property was not exempt from dispossession.

This lawsuit is baseless and brought a two-fold improper purpose of (1) challenging the nonjudicial foreclosure and (2) attempting to assert class-action claims against MidCountry and Taft.  All claims in the Complaint are legally meritless and should be dismissed with prejudice.

## FACTUAL BACKGROUND[1]

### A.    THE PARTIES

Fiecke-Stifter resides in Hutchinson, Minnesota, and is the personal representative for the Estate of Doris M. Fasching.  Compl. ¶ 7.

MidCountry is a federally charted savings bank with its principal executive office address located at 7825 Washington Avenue South, Suite 900, Bloomington, Minnesota 55439. Ans. ¶ 8.  Taft is a Ohio professional corporation with its Minnesota office located at 2200 IDS Center, 80 South 8th Street, Minneapolis, Minnesota 55402.  Compl. ¶ 9.

### B.    THE PROPERTY AND RELEVANT SECURITY INTEREST DOCUMENTS

Fasching died on September 21, 2021.  Compl. ¶ 11.  Fasching was a widower, and a probate matter concerning her estate commenced on December 6, 2021.  *Id.* ¶¶ 12-13.  Fiecke-Stifter was the personal representative of the Fasching's probate estate.  *Id.* ¶ 14.

The Property was part of Fasching's probate estate.  *Id.* ¶ 16. The Property was subject to an Home Equity Line of Credit Agreement ("First Note"), dated December 16, 1998, in favor of First Federal FSB.  *Id.* ¶ 17; Ans. ¶¶ 17-18, Ex. 1.[2]  The Note was secured by a Mortgage, dated December 16, 1998 ("First Mortgage"), with the "mortgagor" and "Borrower" defined thereunder as Fasching and her husband, Harold Fasching. Compl. ¶ 18; Ans. ¶ 18, Ex. 2 (First Mortgage) at 1. The First Note and First Mortgage were subsequently amended as follows:

---

[1]    Defendants do not concede the veracity of any of the Complaint's allegations, which are treated as true only for purposes of this motion.

[2]    References herein to "Ex." are the exhibits attached to Defendants' Answer to the Complaint.

    i.        The Federal Home Equity Line of Credit Amendment, dated October 23, 2003 ("Second Note"), and a Home Equity Loan Modification Agreement, dated October 23, 2003 ("Second Mortgage") (Ans. ¶ 18; Exs. 3-4);

    ii.       The "MN HELOC PRIME +0.000 AMENDMENT TO ORIGINAL AGREEMENT," dated February 7, 2009 ("Third Note"), and the Modification of Mortgage, dated February 7, 2008 ("Third Mortgage") (Ans. ¶ 18; Exs. 5-6); and

    iii.     The First Lien Home Equity Line of Credit Agreement, dated February 6, 2013 ("Fourth Note"), and Modification of Mortgage, dated February 6, 2013 ("Fourth Mortgage") (Ans. ¶ 18; Exs. 7-8).[3]

As a result of the amendments, the Fourth Note governed the terms of Fasching's home equity line of credit. Ex. 7 (Fourth Note) at 1 ("The First Lien Home Equity Line of Credit Agreement governs your line of credit…issued through MidCountry Bank"). The Fourth Note's "Minimum Payment" payment term required that "[y]our 'Regular Payment' will be based on a percentage of your outstanding balance plus all accrued **FINANCE CHARGES** as shown below or $25.00, whichever is greater" and provided that "[y]our <u>payments will be due monthly</u>." *Id.* (bold and capitalization in original; underling added); *see also* Ex. 2 (First Mortgage) at § 1 ("Borrower shall promptly pay when due the principal of and interest on the debt payments are due under the Note"). The Fourth Note also provided that "***[y]ou agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement.***" Ex. 7 (Fourth Note) at 1 (emphasis added). The outstanding Note balance was sent in periodic statements that "identify the Minimum Payment you must make for that billing period and the date is due." *Id.*

---

[3]     The term "Note" refers to the First Note, Second Note, Third Note, and Fourth Note. The term "Mortgage" refers to the First Mortgage, Second Mortgage, Third Mortgage and Fourth Mortgage.

The Fourth Note set forth the following default terms for the Note and Mortgage:

> **Termination and Acceleration.** *We can terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen*: (1) You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (2) *You do not meet the repayment terms of this Credit Agreement*. (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, lot example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

Ex. 7 (Fourth Note) at 4 (bold in original; bold with italics added). The Note was secured by the "collateral" described in the Mortgage—the Property. *Id.* at 3; Ex. 2 (First Mortgage) at 1.

The Note also contained the following waiver provisions:

> **Delay in Enforcement**. We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. *If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice*. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

*Id.* at 4 (bold in original; bold with italics added); *see also* Ex. 2 (First Mortgage) § 11 ("Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy"). The Note was "**governed by federal law applicable to us and, to the extent not preempted by federal law**, **the laws of the State of Minnesota without regard to its conflicts of law provisions**." Ex. 7 (Fourth Note) at 5 (bold in original; *see also* Ex. 2 (First Mortgage) § 14 ("This Security Instrument shall

be governed by federal law and the law of the jurisdiction in which the Property is located").

## C.    BORROWER'S BREACH OF THE NOTE AND MORTGAGE

Other than an October 4, 2021 payment (made for the September 2021 payment), MidCountry did not receive any payments in October 2021. Ex. 13. The failure to make a payment for the amount owed in October was a breach of the Note and Mortgage. *See id.* Past due notices generated by MidCountry's computer system were mailed to the address on file on November 12, 2021 and again on November 19, 2021. Ans. ¶ 22, Ex. 11.

The October 2021 billing statement indicated the "Total Amount Due" by the "Payment Due Date" of "11/26/2021" was $1,062.67 (which included the past-due amount owed). Ex. 9. MidCountry did not receive any payments in November for the amount stated in the October 2021 billing statement. Ex. 13. This failure to pay in full the amount owed as of November 26, 2021 was another breach of the Note and Mortgage. *See id.* Past due notices generated by the MidCountry's computer system were mailed to the address on file on December 13, 2021 and again on December 21, 2021. Ans. ¶ 22, Ex. 12.

The November 2021 billing statement indicated the "Total Amount Due" by the "Payment Due Date" of "12/26/2021" was $1,640.62 (which included the past-due amount). Ex. 10. MidCountry received one underpayment of $562.35 on December 6, 2021. Ex. 13. This failure to pay in full the amount owed as of December 26, 2021 was another breach of the Note. *See id.*

The above-identified breaches of the obligation to timely pay in full the amounts owed in October, November and December provided MidCountry with several,

independent justifications to terminate and accelerate the Note and Mortgage. Ans. ¶¶ 22, 25. After termination and acceleration of the Note and Mortgage, MidCountry reversed and returned payments received on December 29, 2021 and February 22, 2022, which were tendered after termination and acceleration. Ans. ¶ 37; Ex. 17.

## D.    MIDCOUNTRY'S FORECLOSURE BY ADVERTISEMENT

On January 10, 2022, MidCountry provided a "Preforeclosure Notice – Foreclosure Prevention Counseling form" to all "Occupant(s)" of the Property. Ex 14. MidCountry engaged Taft to effectuate a non-judicial foreclosure of the Property, which MidCountry had a present right of possession by virtue of the above-identified breaches of the Note and Mortgage. *See* Compl. ¶ 33; Ans. ¶¶ 22, 25, 34. On February 18, 2022, MidCountry personally served Fiecke-Stifter with a "Notice of Mortgage Foreclosure Sale." Ex. 15. Around this time, a copy of the Notice of Mortgage Foreclosure for the Property was published with *The McLeoud County Chronicle*. Ans. ¶ 31; Ex. 16. On April 7, 2022, the Property was sold at a sheriff's auction for $76,000. Compl. ¶¶ 39, 41; Ans. ¶¶ 39, 41. Fiecke-Stifter thereafter redeemed the Property for $77,159.29. Compl. ¶ 42; Ans. ¶ 42.

## E.    THIS LAWSUIT

Plaintiffs filed this lawsuit on December 9, 2022. Plaintiffs challenge MidCountry's foreclosure of the Property by raising claims against MidCountry for breach of contract (Count I) and violation of TILA (Count II), and a claim against Taft for a purported violation of FDCPA (Count III).

Plaintiffs' breach of contract claim alleges that MidCountry "held Fasching in default of obligations under the Note and Mortgage because she died" (Compl. ¶ 76), and

that by "accelerating Fasching's debt under the note because of her death, MidCountry Bank violated the terms of the Contract and Federal Law" (*id.* ¶ 81). Plaintiffs allege that MidCountry's receipt of payments after Fasching's death constituted "a waiver of the default by death of a borrower clause" (*id.* ¶ 85), MidCountry was mandated to "credit periodic payments on consumer credit transaction secured by a consumer's principal dwelling as of the date of receipt" (*id.* ¶ 87), and, therefore, MidCountry's "return of accepted payments and failure to apply those payments is a breach of contract" (*id.* ¶ 88).

Plaintiffs' TILA claim alleges that Fiecke-Stifter made Note payments after Fasching's death, and those payments were "periodic payments on a consumer credit transaction secured by a consumer's principal dwelling as of the date of receipt." Compl. ¶¶ 92-93. Plaintiffs further allege that MidCountry received the payments, credited them to the Note's account, and then ultimately returned those payments. *Id.* ¶¶ 94-97. Plaintiffs allege that, in doing so MidCountry violated TILA, which "mandates that servicers credit periodic payments on consumer credit transaction secured by a consumer's principal dwelling as of the date of receipt." *Id.* ¶ 98.

Plaintiffs' FDCPA claim alleges that Taft was a "debt collector" under the statute. Compl. ¶ 102. Plaintiffs further allege that MidCountry foreclosed on the Property because of Fasching's death, and MidCountry refused and/or returned payments made by Fiecke-Stifter based on MidCountry's "improper acceleration of the debt." *Id.* ¶¶ 104-108. Plaintiffs assert that MidCountry accelerated the Note pursuant to a "due-on-sale" clause in the Mortgage that was prohibited by federal law and, as a result, Taft's "foreclosure by advertisement was a nonjudicial action to effect dispossession or disablement of property

when there was no present right of possession of the property claimed as collateral" such that Taft violated the FDCPA. *Id.* ¶¶111-113.

## ARGUMENT

## I.    JUDGMENT ON THE PLEADINGS STANDARD

After the pleadings are closed, any party may move for judgment on the pleadings. "In reviewing a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), a court applies the same standard used in reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." *Landmark Comm. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, 12-cv-1103, 2012 WL 4511185, at *2 (D. Minn. Oct. 2, 2012) (citation omitted). A judgment on the pleadings "serves to eliminate [pleadings] which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

On such a motion, the court may consider pleadings, matters of public record, and materials embraced by and exhibits attached to the pleadings. *See Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014) (citations omitted); *Landmark*, 2012 WL 4511185, at *2 (same). In particular, "[w]here, as here, the claims relate to a written contract that is part of the record in the case, [this Court] consider[s] the language of the contract when reviewing the sufficiency of the complaint." *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (internal quotation omitted). While "the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor" (*Landmark*, 2012 WL 4511185, at *2), it need not "blindly accept the legal conclusions drawn by the pleader from the facts" or accept "wholly conclusory allegations,

or unwarranted factual inferences." *Gisege v. Minn. Dep't of Corr.*, No. 06-1353, 2007 WL 2892024, at *15-16 (D. Minn. Sept. 28, 2007) (internal quotations omitted).[4]

To avoid dismissal, "a claim must be _facially plausible_, meaning that the 'factual content…allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (emphasis added) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). "Although the factual allegations in the complaint need not be detailed, they must be sufficient to 'raise a right to relief above the speculative level.'" *Landmark*, 2012 WL 4511185, at *2 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Where we can infer from those factual allegations no more than a 'mere possibility of misconduct,' the complaint must be dismissed." *Cole*, 599 F.3d at 861 (quoting *Iqbal*, 556 U.S. at 679).

## II.    PLAINTIFFS' BREACH OF CONTRACT CLAIM (COUNT I) AGAINST MIDCOUNTRY FAILS AS A MATTER OF LAW

### A.    The Garn-St. Germain Depository Institutions Act

A "due-on-sale clause" is "a contract provision which authorizes a lender, at its option, to declare due and payable sums secured by the lender's security instrument if all or any part of the property, or an interest therein, securing the real property loan is sold or transferred without the lender's prior written consent." 12 U.S.C. § 1701j-3(a)(1). The Act

---

[4]     The Court need not accept factual allegations contradicted by documents referenced in the Complaint – the document controls. *See Bohan v. Honeywell Int'l, Inc.*, No. CIV. 02-612 JELJGL, 2002 WL 31767786, at *1 (D. Minn. Dec. 9, 2002) (Ericksen, J.) ("If a document attached to the complaint contradicts the complaint's allegations, the document controls and the court need not accept as true the inconsistent allegations in the complaint") (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991), *and Sazerac Co. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994)).

"prohibits states from banning due-on-sale clauses" and provides that "[n]otwithstanding any provision of the constitution or laws (including judicial decisions) of any [s]tate to the contrary, a lender may, subject to subsection (c) of this section, enter into or enforce a contract containing a due-on-sale clause with respect to a real property loan." *Estate of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1011 (6th Cir. 2018) (first alteration in original) (quoting 12 U.S.C. § 1701j-3(b)(1)).  "That means a due-on-sale clause is presumptively valid unless it qualifies as one of nine exceptions listed in § 1701j-3(d)[.]" *Id.*  Two of these qualified exemptions are a "a transfer to a relative resulting from the death of a borrower," or "a transfer where the spouse or children of the borrower become an owner of the property." 12 U.S.C. § 1701j-3(d)(5)-(6).  Otherwise, "the exercise by the lender of its option pursuant to such a clause ***shall be exclusively governed by the terms of the loan contract***, and all rights and remedies of the lender and the borrower ***shall be fixed and governed by the contract***." *Id.* § 1701j-3(b)(2) (emphasis added).

### B.     The Act provides no express or implied cause of action

Courts across the country have uniformly held that there is no private cause of action under § 1701j of the Act.  *See, e.g., Estate of Cornell*, 908 F.3d at 1013 ("The Garn-St. Germain Act does not create an express cause of action because it does not state, 'in so many words, that the law permits a claimant to bring a claim in federal court.'...Nor does the Garn-St. Germain Act create an implied cause of action"); *Nelson v. Nationstar Mortg. LLC*, No. 7:16-cv-00307-BR, 2017 WL 1167230, at *2 (E.D.N.C. Mar. 28, 2017) (the Act does not create a cause of action for damages); *Turman v. Wells Fargo Bank, N.A.*, No. 3:15-cv-1119, 2016 WL 5467947, at *3 (M.D. Tenn. Sept. 29, 2016) (dismissing a lawsuit

alleging violations of Section 1701j-3 because that section "does not provide [plaintiff] with a private right of action"); *Dupuis v. Yorkville Fed. Sav. & Loan Ass'n*, 589 F. Supp. 820, 823 (S.D.N.Y. 1984) (same).

Private litigants can only use the Act either (1) "in states that allow non-judicial foreclosures…***the state can create its own cause of action that allows a mortgagor to preemptively raise the [Act as a] defense***" (*Estate of Cornell*, 908 F.D. at 1014 (emphasis added)), or (2) when seeking prospective declaratory or injunctive relief to prevent a foreclosure and/or transfer of the property from occurring (*Casa Grande, Inc. v. Minn. Mut. Life Ins. Co.*, 596 F. Supp. 1385, 1385 (S.D. Miss. 1984) ("Builder sought declaratory judgment, and lender counter-claimed asking for declaratory relief as to its right to enforce due-on-sale clause")).  If no private action is created by a federal statute or regulation, however, litigants cannot "whether styled as a breach of contract claim or something else" attempt to enforce a regulation.  *See Weatherford v. Nev. Rural Hous. Auth.*, 946 F. Supp. 2d 1101, 1111 (D. Nev. 2013) (citing *Taylor v. Hous. Auth. Of City of New Haven*, 645 F.3d 152, 153 (2d Cir. 2011).  In other words, even when federal statutes or regulations are explicitly or implicitly incorporated into the applicable contract, they are not actionable.  *See Ulrich-Kurtzer v. Wells Fargo Bank, N.A.*, No. C15-283RAJ, 2016 WL 4275451, at *3-4 (W.D. Wash. Jan. 28, 2016).

Plaintiffs cannot—explicitly or implicitly—maintain any claims based on alleged violations of the Act.  For private litigants, the Act's application is substantially limited to defending or otherwise trying to prevent an ongoing foreclosure and/or seizure of property.  This is not the situation here, as (1) the foreclosure sheriff's sale and (2) Fiecke-Stifter's

redemption of the Property have already occurred. *See* Compl ¶¶ 36, 39-42. Plaintiffs thus cannot, "whether styled as a breach of contract claim or something else," pursue an "implied cause of action" to seek money damages based on the Act.

### C. Plaintiffs' breach of contract claim fails because MidCountry did not breach the Note or Mortgage

Minnesota contract law applies because the Note and Mortgage have a Minnesota choice-of-law provision. Ex. 7 (Fourth Note) at 5; Ex. 2 (First Mortgage) § 15; *see also St. Jude Med. S.C., Inc. v. Biosense Webster, Inc.*, 818 F.3d 785, 788 (8th Cir. 2016) ("[U]nder Minnesota law, a contractual choice-of-law provision will govern so long as the parties acted in good faith and without an intent to evade the law"). The primary objective in contract interpretation is to ascertain the mutual intent of the parties at the time they executed the contract. *See Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004). Minnesota applies the "objective manifestation theory" of contract interpretation, under which the focus is on the reasonable meaning of the contract language to determine the parties' intent. *See Hill v. Okay Constr. Co.*, 252 N.W.2d 107, 114 (Minn. 1977). Courts generally give words in a contract their plain and ordinary meaning unless the entirety of the agreement clearly demonstrates a contrary intent. *See Bank Midwest, Minnesota, Iowa, N.A. v. Lipetzky*, 674 N.W.2d 176, 179 (Minn. 2004). A contract is viewed as a whole, interpreting particular language in the context of other contract provisions. *See Eng'g & Const. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 705 (Minn. 2013). Interpretation of unambiguous contracts is a question of law for the court. *See Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003). Each

of the Complaint allegations purportedly supporting Plaintiffs' breach of contract claim fails as a matter of law.

1.    <u>ALLEGATION NO. 1</u>: **Regardless of the due-on-sale clause, there were several, independent justifications for acceleration**

The Complaint alleges that "[b]y accelerating Fasching's debt under the note because of her death, MidCountry Bank violated the terms of the Contract and Federal Law." Compl. ¶ 81. Courts have dismissed claims asserting an "unlawful foreclosure" under the Act's prohibitions for a "due on sale" clause resulting from the death of a borrower when the lender "accelerated payment on the loan and foreclosed" on property when, despite the death of the borrower, "the Borrowers and/or Defendants failed to pay the amount due on the loan." *See, e.g.*, *Deutsche Bank Nat'l Tr. Co. as Tr. for HSI Asset Securitization Corp. Tr. 2006-OPT3, Mortg. Pass-Through Certificates, Series 2006-OPT3 v. Guerrero*, No. SA-17-CV-00952-OLG, 2019 WL 5026948, at *2 (W.D. Tex. July 11, 2019); *see also Bantom v. Bayview Loan Servicing*, No. 17-CV-12121, 2017 WL 6422068, at *6 (E.D. Mich. Dec. 18, 2017), *vacated and remanded on other grounds by Est. of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008 (6th Cir. 2018) (granting lender's motion for judgment on the pleadings because the plaintiffs "could not credibly argue" that the "mortgage was not in default" for nonpayment when the lender "initiated foreclosure proceedings" despite prior death by transfer); *Ulrich-Kurtzer*, 2016 WL 4275451, at *6 (finding that the defendant "clearly complied" with the Act related to exercising a due-on-sale clause for the death of the borrower that "[i]t was not until Plaintiff became unable to maintain the monthly mortgage that Defendant began the foreclosure

proceedings, not the mere fact that the transfer [by death] occurred"); *In re Black*, 221 B.R. 38, 40 (Bankr. S.D. Fla. 1998) (explaining that the lender "foreclosed on the mortgage" when a "default occurred" regardless of the due-on-sale provision).

The pleadings demonstrate that MidCountry terminated the Note and accelerated payment after multiple breaches by failing to make timely monthly payments in full in October, November, and December 2021. *See* Ans. ¶¶ 22, 25; Exs. 9-13. Each of these breaches was an independent justification for MidCountry to terminate the Note and accelerate payment of "the entire outstanding balance in one payment," because each failed payment (untimely, incomplete, or non-payment) was a failure to "meet the repayment terms" of the Note (Ex. 7 (Fourth Note) at 4), which required payment of "not less than the Minimum Payment on or before the due date indicated in your periodic billings statement" (*id.* at 1). Thus, the termination and acceleration of the Note—and the associated foreclosure of the Mortgage—were independently justified by material breaches of the Note's plain and unambiguous payment terms, regardless of the due-on-sale clause and the purported transfer of the Property upon Fasching's death.

### 2. <u>ALLEGATION NO. 2</u>: No waiver

The Complaint alleges that "Plaintiff Fiecke-Stifter and the Estate made regular payments to the loan after Fasching's death" (Compl. ¶ 82), and "MidCountry Bank's receipt of the loan payments after Fasching's death constitutes waiver of the default by death of a borrower clause" (*id.* ¶ 85). These allegations fail to state a cognizable breach of contract claim as a matter of law.

First, Plaintiffs' waiver allegation is meritless because, as set forth above, there was a default under the Note for breaches of the payment terms in October through December 2021.  Thus, the application of the "default by death of a borrower clause" is irrelevant, as MidCountry, regardless of the due-on-sale clause, had the right to terminate and accelerate the Note based on non-payment.

Second, Plaintiffs' waiver allegation is, in any event, belied by the express terms of the Note and Mortgage.  MidCountry's rights concerning waiver and any delay in enforcement of rights under the Note are, as follows, clear and unambiguous:

> **Delay in Enforcement**. We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. ***If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice***. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

Ex. 7 (Fourth Note) at 4 (bold in original, bold with italics added); *see also* Ex. 2 (Mortgage) § 11 at 4 ("Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy").  Indeed, the Act— upon which Plaintiffs premise their claim—provides that "all rights and remedies of the lender and the borrower ***shall be fixed and governed by the contract***."  12 U.S.C. § 1701j-3(b)(2)  (emphasis added).

Applying these clear and unambiguous terms, MidCountry did not waive its rights to place the Note in default by any delay in enforcing its rights.  The Note was in default in October 2021, which was followed by two more independent and material breaches of the Note for failure to make full monthly payments in November and December 2022.  *See*

Exs. 9-13. Any delay in MidCountry's acceleration of the Note and foreclosure of the Property in October 2021 actually evidences MidCountry's good faith efforts to avoid termination, acceleration, and foreclosure. Indeed, MidCountry exercised its rights only *after*: (1) no payments were made in November 2021 and then the December 26, 2021 payment was missed (Exs. 10 and 13), and (2) past due notices generated by MidCountry's system were issued and mailed to the address on file in November *and* December (Exs. 11 and 12). This was all despite the Note providing that MidCountry may enforce its rights for non-payment "at any time in the future without advance notice" and MidCountry's express right to "terminate your account in the future if you have not paid." Ex. 7 (Fourth Note) at 4. Therefore, any receipt of payments during, around, or after this time period did not constitute any waiver.

3.    **ALLEGATION NO. 3: No prohibition on the return of untimely payments**

The Complaint alleges that "MidCountry Bank's return of accepted payments and failure to apply those payments is a breach of contract." Compl. ¶ 88. Despite that bald allegation, the Complaint fails to cite any Note provision prohibiting MidCountry from returning partial payments or payments made after the Note was terminated and accelerated. MidCountry's return of Fiecke-Stifter's untimely payments is plainly governed by the "Delay in Enforcement" provision cited above—which again, allows MidCountry to enforce its rights under the Note without "advance notice." Ex. 7 (Fourth Note) at 4. After there was no satisfaction of the payment due by December 26, 2021—which was the third consecutive breach of the Note in as many months (Exs. 9, 10, and 13)—MidCountry

elected to terminate and accelerate the Note. Accordingly, MidCountry returned the post-termination and acceleration payments made on December 29, 2021 and February 22, 2022. *See* Ans. ¶ 37; Ex 17. To be sure, returning these late payments actually demonstrates MidCountry's adherence to the Note, which provided that after termination and acceleration, MidCountry could only seek and demand payment of "the entire outstanding balance in one payment." Ex. 7 (Fourth Note) at 4.

**4.    <u>ALLEGATION NO. 4</u>: MidCountry's return of payments did not violate TILA**

Plaintiffs assert that "[t]he Dodd-Frank Act mandates that servicers credit periodic payments on consumer credit transaction secured by a consumer's principal dwelling as of the date of receipt. 15. U.S.C. § 1639f(a)." Compl. ¶ 87. For similar reasons explained in Section II.B, Plaintiffs cannot pursue a state breach of contract claim based on an alleged violation of TILA. *See Nix v. Option One Mortg. Corp.*, No. CIV. 05-03685(RBK), 2006 WL 166451, at *10 (D.N.J. Jan. 19, 2006) ("In other words, the Plaintiff's claim for rescission seems to be a claim pursuant to TILA, rather than a state law claim for breach of contract based upon the agreements made in the loan transaction"). Instead, Congress expressly authorized a claimant to bring a private right of action under 15. U.S.C. § 1640(a) of TILA against "any creditor who fails to comply" with TILA. Accordingly, Plaintiffs may only seek alleged violations of TILA as its own cause of action as prescribed by Section 1640—not bootstrapped within a breach of contract claim. Moreover, as explained in Section III below Plaintiffs' TILA claim is legally meritless.

### III.    PLAINTIFFS' VIOLATION OF TILA CLAIM (COUNT II) AGAINST MIDCOUNTRY FAILS AS A MATTER OF LAW

Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." *Keiran v. Home Cap., Inc.*, 858 F.3d 1127, 1130-31 (8th Cir. 2017) (citing 15 U.S.C. § 1601(a)).  TILA's primary focus is that lenders provide the "required disclosures" that must be made to "each consumer whose ownership interest is or will be subject to the security interest."  *Id*. (quoting 12 C.F.R. § 1026.23(a), (b)(1)).  Lawsuits based on TILA violations, therefore, typically assert claims regarding inadequate disclosures concerning finance charges and interest rates.  *See, e.g.*, *Danger v. Nextep Funding, LLC*, 355 F. Supp. 3d 796, 802-03 (D. Minn. 2019) (TILA claims based on inadequate disclosures of finance charges and "exorbitant" concealed interest rates).

Section 1639f(a) of TILA generally requires mortgage servicers to credit payments to consumer accounts "as of the date of receipt" of payment, unless delayed crediting has no effect on either late fees or consumers' credit reports.  *See Fridman v. NYCB Mortg. Co., LLC*, 780 F.3d 773, 775-76 (7th Cir. 2015) (citing 15 U.S.C. § 1639f(a)).  This provision's implementing regulation, known as Regulation Z, essentially repeats this requirement.  *See* 12 C.F.R. § 1026.36(c)(1)(i) ("No servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt....").  As explained in *Friedman v. NYCP Mortg. Co.*, 780 F.3d at 779-80, the purpose of Section 1639f(a) is to prevent lenders from delaying a payment's "receipt date" to "rack up" additional late fees:

> The interpretation we adopt promotes an important purpose of TILA: to protect consumers against unwarranted delay by mortgage servicers. When a

consumer interacts directly with a mortgage servicer (such as by delivering a check, personally paying by telephone, or filling out an electronic authorization form on a servicer's website), it is the servicer that decides how quickly to collect that payment through the banking system. Nothing dictates when the servicer must deposit the check, use the payment information given over the phone to receive payment, or place the electronic authorization information in an ACH file and collect the funds through the EPN. ***The servicer is in control of the timing, and without the directive to credit the payment instrument when it reaches the servicer, the servicer could decide to collect payment through a slower method in order to rack up late fees.***

***

***The opportunity (and perhaps even incentive) to delay the crediting of accounts explains TILA's "date of receipt" requirement. Reading TILA to require mortgage servicers to credit electronic authorizations when they are received protects consumers from this unwarranted—and possibly limit-less—dela***y.

(Emphasis added). This overarching purpose of Section 1639f(a) is also reflected in Section 1640(a)(4)—the specific section that provides a private cause of action for TILA violations—that states damages for "failure to comply with any requirement under section 1639 of this title" are "***an amount equal to the sum of all finance charges and fees paid by consumer***." (Emphasis added).

Plaintiffs' reliance on TILA as both a basis of its breach of contract claim in Count I and for a standalone TILA claim in Count II is severely misplaced and legally meritless. Contrary to the Complaint's contrived allegations, TILA does not prevent banks or lenders from returning payments made <u>after</u> a loan/note is already default, terminated, and accelerated—as was the case here.  Instead, Section 1639f(a) prevents lenders/banks from receiving a payment on a loan, but intentionally delaying the receipt date of that payment in order to incur additional late fees.  The Complaint contains <u>no</u> allegations (nor could it) that MidCountry intentionally delayed crediting any payments made towards the Note in

order to "rack up late fees."  On the contrary, Plaintiffs concede that MidCountry "received" and "credited those payment" made towards the Note after Fasching's death.  Compl. ¶¶ 92-95.

Nor are there plausible Complaint allegations that MidCountry delayed crediting payments to the Note's account in order to create or cause a breach.  The pleadings show that the Note and Mortgage were already in a state of default in October 2021 and continued to be in default after successive material breaches in each month thereafter until the Note was terminated and accelerated in late December 2021, including complete failure to make a monthly payment towards the amounts due in October and November 2021.  Exs. 9, 10, and 13.  Therefore, MidCountry's return of untimely payments subsequently made on December 29, 2021 and February 22, 2022—in recognition that the Note was already terminated and accelerated—was simply MidCountry abiding by the terms of the Note, which provided that MidCountry could "terminate" the Note and then seek payment of "the entire outstanding balance in ***one payment***."  Ex. 7 (Fourth Note) at 4 (emphasis added). In other words, because MidCountry elected to pursue termination and acceleration rights, MidCountry could <u>not</u> accept partial payments towards the Note.

Ultimately, the Complaint fails to cite any legal basis or plead any plausible factual allegation that these circumstances somehow constitute a TILA violation, much less one that is actionable under Section 1639f(a).  *See Tonea v. Bank of Am., N.A.*, 6 F. Supp. 3d 1331, 1337-38 (N.D. Ga. 2014) ("Plaintiff alleges Defendant violated TILA by failing to disclose to him that the debt had been 'paid down' under the terms of the loan…relief cannot be granted on this claim because Plaintiff did not allege any other fact in connection to his

TILA claim that would tend to show Defendant's liability").  Accordingly, the Court should dismiss all of Plaintiffs' claims based on TILA in Counts I and II of the Complaint.

## IV.  PLAINTIFFS' FDCPA CLAIM (COUNT III) AGAINST TAFT FAILS AS A MATTER OF LAW

### A.  The FDCPA applies limited restrictions to those who engage only in nonjudicial foreclosure proceedings to enforce security interests

The FDCPA regulates "'debt collector[s].'" 15 U.S.C. § 1692a(6); *see* 91 Stat. 874, 15 U.S.C. § 1692 *et seq.*  The FDCPA defines a "debt collector" as "any person...in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Within the definition of "debt collector," however, there is a "limited-purpose definition" setting forth that "[f]or the purpose of section 1692f(6)" (a separate provision of the Act), "[the] term [debt collector] also includes any person...in any business the principal purpose of which is the enforcement of security interests."  *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1036 (2019) (quoting 15 U.S.C. § 1692a(6)).  Accordingly, "but for" the specific prohibitions listed in § 1692f(6), "those who engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the Act."  *Id.* at 1038; *see also Brian v. Gislason & Hunter LLP*, No. CV 20-1859 (PAM/LIB), 2021 WL 101132, at *2 (D. Minn. Jan. 12, 2021) (applying *Obduskey* in dismissing claims against a law firm related to allegations that sending of letter with Notice of Default of Note and Mortgage, which included a preforeclosure notice, violated the FDCPA).

MidCountry engaged Taft for the limited purpose of enforcing its security interest in the Property through foreclosure of the Mortgage. Ans. ¶ 32. Thus, in light of *Obduskey*, Taft engaged only in "nonjudicial foreclosure proceedings' and is not a debt collector under the FDCPA. *See Obduskey*, 139 S. Ct. 1036. Therefore, the vast majority of Plaintiffs' FDCPA claims—including alleged violations of 15 U.S.C. § 1692e(2)(A) (Comp. ¶ 112(a)), 15 U.S.C. § 1692e(5) (*id*. ¶ 112(b)), and 15 U.S.C. § 1692(f)(1) (*id*. ¶ 112(c))—are inapplicable to Taft as a matter of law and must be dismissed.

### B. Taft did not violate Section 1692f(6)

That leaves only the allegation in Paragraph 112(d) of the Complaint, which relates to purported violations of the FDCPA restrictions applicable to the "limited-purpose definition" for nonjudicial foreclosure proceedings as provided in Section 1629(f)(6) of the FDCPA. *See* 15 U.S.C. § 1629f(6); *see also Obduskey*, 139 S. Ct. 1036. That claim also fails as a matter of law.

Those who engage in nonjudicial foreclosure proceedings under § 1629f(6) violate the FDCPA if there is a:

> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if –
>
>> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>>
>> (B) there is no present intention to take possession of the property; or
>>
>> (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1629f(6)(A)-(C). Taft did not violate any of the limited restrictions in Section 1629f(6).

24

1. <u>**Section 1629(f)(6)(A)**</u>: **MidCountry had a present right to possession**

If a lender had the right to foreclose under the applicable loan documents because the borrower's default, then the lender—and by extension the law firm engaged to pursue the nonjudicial foreclosure—has a present right to take possession under the FDCPA. *See, e.g.*, *Speleos v. BAC Home Loans Servicing, L.P.,* 824 F. Supp. 2d 226, 233 (D. Mass. 2011); *see also Stagikas v. Saxon Mortg. Servs., Inc.,* 795 F.Supp.2d 129, at 138-39 (D. Mass. July 5, 2011) (rejecting argument that there was no present right to possession where loan servicer foreclosed in violation of a TPP because TPP did not purport to modify original loan agreement); *Akerlund v. TCF Nat'l Bank of Minn.*, No. CIV. 99-1537(MJD/JGL, 2001 WL 1631440, at *6 (D. Minn. June 11, 2001) ("Because Defendants had the present right to possession at the time they repossessed Plaintiffs' truck from the Postal Service property, Defendant MRB did not violate the Fair Debt Collection Practices Act"). "A court should look to state law requirements to determine whether there was a present right to take possession under the FDCPA." *Revering v. Norwest Bank Minn., N.A.,* No. Civ. 99–480/RHK/JMM, 1999 WL 33911360, at *5 (D. Minn. Nov. 30, 1999). In Minnesota, a party is generally entitled to seek foreclosure of a mortgage if "some default condition" of a recorded mortgage "has occurred." *See generally* Minn. Stat. § 580.02.

MidCountry clearly had a present right to take possession of the Property. As explained in Section II, the Note governing the Mortgage was in default stemming from the failure to make timely monthly payments, failure to pay monthly payments in full, and/or failure to make monthly payments whatsoever for three consecutive months in

October, November, and December 2021.  *See* Ans. ¶ 22, Exs. 9-13.  Therefore, pursuant to its rights under the Note for failure to "meet the repayment terms," MidCountry had the right to terminate/accelerate the Note and proceeded with the foreclosure of the Mortgage on the Property.  *See* Ex. 7 (Fourth Note) at 4; *see also* Ans. ¶¶ 22, 25, 37; Exs. 14-16. Based on this, and because MidCountry had a present right to take possession of Property pursuant to the Note and Mortgage, Taft did not violate the FDCPA by taking "nonjudicial action to effect dispossession" of the Property through nonjudicial foreclosure proceedings.

**2.    Section 1629f(6)(B): MidCountry had a present intention to take possession**

Section 1629f(6)(B) is clearly inapplicable and fails to support a cognizable FDCPA claim.  MidCountry indisputably had a "present intention" to take possession of the Property, as it actually commenced mortgage foreclosure proceedings, proceeded with the Sheriff's sale, and Fiecke-Stifter has since redeemed the Property.  *See* Compl. ¶¶ 33, 39, 42; Ans. ¶¶ 22, 25, 31, 34, 39; Exs. 14-16.

**3.    Section 1629f(6)(C): The Property was not exempt from dispossession**

Plaintiffs' allegation that the Property was exempt from dispossession under the Act is meritless.  As explained in Section II, (1) the Act is inapplicable to this case, and (2) MidCountry had the right to terminate/accelerate and  foreclose on the Property because of failure to make monthly payments due, regardless of Fasching's death and any resulting transfer of the Property. Therefore, Plaintiffs' claims that the Property was somehow exempt from dispossession under the Act's prohibitions related to due-on-sale clauses for death transfers is inapplicable as a matter of law.

## CONCLUSION

Defendants respectfully request that the Court grant their motion for judgment on the pleadings in and dismiss all claims in the Complaint in their entirety.

Dated:  March 20, 2023

**TAFT STETTINIUS & HOLLISTER LLP**

By:  *s/Jason R. Asmus*

    Jason R. Asmus (#0319405)
    Schaan P. Barth (#0397898)
2200 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 977-8400
Fax:       (612) 977-8650
Email:    jasmus@taftlaw.com
        sbarth@taftlaw.com

**COUNSEL FOR DEFENDANTS**

76418967v6