UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sandra K. Fiecke-Stifter and The Estate of
Doris M. Fasching, *by and through Personal
Representative Sandra Fiecke-Stifter*,

        Plaintiffs,

v.

Taft Stettinius & Hollister LLP,

        Defendant.

File No. 22-cv-3056 (ECT/DTS)

**OPINION AND ORDER**

_____

Carl E. Christensen and Christopher Wilcox, Christensen Sampsel PLLC, Minneapolis, MN, and Thomas J. Lyons Jr., Consumer Justice Center P.A., Vadnais Heights, MN, for Plaintiffs Sandra K. Fiecke-Stifter and The Estate of Doris M. Fasching.

Jason R. Asmus, Justin P. Weinberg, and Schaan Barth, Taft Stettinius & Hollister LLP, Minneapolis, MN, for Defendant Taft Stettinius & Hollister LLP.

_____

        Plaintiff Sandra K. Fiecke-Stifter alleges that Defendant Taft Stettinius & Hollister violated the Fair Debt Collection Practices Act by foreclosing on a home that had been owned by Sandra's late mother, Doris M. Fasching. MidCountry Bank was the lender, note holder, and mortgagee. Taft represented MidCountry in the nonjudicial foreclosure proceedings. Sandra alleges that MidCountry foreclosed without a present right to possession in violation of § 1692f(6)(A) of the FDCPA.

        Taft moves to dismiss, and the motion will be granted. Under the mortgage's terms, there was a default because Sandra made late payments on the note. Sandra's various arguments for why MidCountry lacked a present right to possession despite this default are

not persuasive. MidCountry was not required to give a notice of default before foreclosing under the terms of the mortgage. Nor was it required to accelerate the loan. Although Sandra may have had a right to cure (until MidCountry exercised its right to accelerate the note), this is beside the point, because she never completely cured the default after MidCountry commenced the foreclosure. And although a violation of Minnesota foreclosure-by-advertisement statutes may have rendered the foreclosure void, a void foreclosure does not mean MidCountry lacked a present right to possession.

## I[1]

*The Corrected Second Amended Complaint doesn't change Sandra's core factual allegations.* To recap, Doris owned a home in Hutchinson, Minnesota. ECF No. 52 ¶¶ 17, 21. She and her husband took out a line of credit from MidCountry, secured against the home. *Id.* ¶ 19. When Doris died in September 2021, predeceased by her husband, she was current on all payments. *Id.* ¶¶ 11–12, 23. Sandra continued to reside in the home after Doris's death and made payments on the loan. *Id.* ¶¶ 24–25. On February 1, 2022, MidCountry initiated a foreclosure-by-advertisement proceeding. *Id.* ¶ 72. MidCountry appointed Taft as its attorney to foreclose on the property. *Id.* ¶ 75. The property was sold

---

[1] The facts are drawn from the Corrected Second Amended Complaint and taken as true. The original note and mortgage and subsequent amendments are also considered because they are embraced by the pleadings. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). Although Sandra's breach-of-contract claim has been dismissed, these documents are central to Sandra's FDCPA claim because her claim rests on the premise that MidCountry lacked a present right to possession when it foreclosed on the property. *See, e.g.*, ECF No. 52 ¶¶ 46–49 (describing § 9's notice-of-default requirement). And she does not contest the authenticity of these documents. It is unnecessary to decide which loan statements and other corporate records generated by MidCountry are appropriate to consider because none are needed to decide this motion.

at a sheriff's auction on April 7, 2022. *Id.* ¶ 88. Sandra later redeemed the property. *Id.* ¶ 91.

*Sandra's new allegations fill in details from late 2021 through early 2022.* In November 2021, Sandra "received a loan statement from MidCountry Bank stating that a payment was due on December 26, 2021, in the amount of $1,640.62." ECF No. 52 ¶ 52. She paid $562.35 on December 6 and $1,640.62 on December 29. *Id.* ¶ 53. In December, Sandra received a loan statement stating that a payment was due January 26, 2022, in the amount of $533.92. *Id.* ¶ 56. In January, Sandra received a loan statement stating that a payment was due February 26 in the amount of $1,619.59, which included the past-due amount of $533.92. *Id.* ¶ 57. "It also included an improper force placed insurance premium of $557.86." *Id.* ¶ 58. Sandra received two past-due notices in February. *Id.* ¶ 60. Sandra paid $1,067.84 on February 22. *Id.* ¶ 61. That same month, Sandra received a loan statement stating that a payment was due March 26, 2022, in the amount of $1,079.41. *Id.* ¶ 62.

*MidCountry returns Sandra's late payments.* On March 24, 2022, weeks after MidCountry initiated foreclosure by advertisement, MidCountry refunded $2,708.46 in payments. ECF No. 52 ¶ 63. That same day, MidCountry sent a past-due notice stating that a payment was due for $2,778.45. *Id.* ¶ 65. Sandra alleges that "any default that occurred was of MidCountry Bank's creation by the return of the payments." *Id.* ¶ 71.

*MidCountry fails to provide a payoff amount.* In March 2022, Sandra's "probate attorney contacted MidCountry Bank through counsel and requested a payoff for the loan." ECF No. 52 ¶ 81. A Taft attorney responded by email on March 31, acknowledging the

request and indicating he would provide a payoff amount.  *Id.* ¶ 82.  Sandra sent a follow-up letter stating her concerns with the impending foreclosure and representing she had the financial resources to pay off the loan.  *Id.* ¶ 83.  MidCountry and Taft never responded to Sandra's request for a payoff amount.  *Id.* ¶ 84.

*Procedural posture.*  In December 2022, Sandra brought this case as a prospective class action against MidCountry and Taft.  ECF No. 1.  After filing an Amended Complaint, ECF No. 31, Sandra's claims against MidCountry were dismissed without prejudice.  *Fiecke-Stifter v. MidCountry Bank*, No. 22-cv-3056 (ECT/DTS), 2023 WL 5844758, at *8 (D. Minn. Sept. 11, 2023).  Sandra moved to amend, seeking to revive her claims against MidCountry and bolster her FDCPA claim against Taft.  ECF No. 38.  Magistrate Judge Schultz denied Sandra's request to revive her claims against MidCountry but allowed Sandra to amend her FDCPA claim against Taft.  ECF No. 50.  In the operative Corrected Second Amended Complaint, Sandra claims Taft violated §§ 1692f(6)(A) and (C) of the FDCPA because MidCountry lacked a present right to possession when Taft foreclosed on the home (on MidCountry's behalf).  ECF No. 52 ¶¶ 167–205.

II

A

Under the familiar Rule 12(b)(6) standard, a court must accept as true all the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted).  Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(citation omitted).  The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## B

Section 1692f(6) prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt" by:

> Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—
>
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; [or]
>
> . . .
>
> (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6).[2]

A brief primer on mortgages helps explain how nonjudicial foreclosures fit into § 1692f(6).  "A mortgage is given to secure the repayment of an underlying debt." 4 Powell on Real Property § 37.12 (2024).  Framed in § 1692f(6)(A)'s terms, a mortgage is a security

---

[2]     Despite alleging a violation of § 1692f(6)(C), *see* ECF No. 52 ¶ 194, Sandra concedes in her response brief that she "does not know of any basis to claim that her home would be exempt under this section." Pls.' Mem. in Opp'n [ECF No. 63] at 18 n.3.  Any claim under § 1692f(6)(C) has therefore been waived.  *See Doe v. Mayorkas*, No. 22-cv-752 (ECT/DTS), 2022 WL 4450272, at *2 (D. Minn. Sept. 23, 2022) (citing *Espey v. Nationstar Mortg., LLC*, No. 13-cv-2979 (ADM/JSM), 2014 WL 2818657, at *11 (D. Minn. June 19, 2014)).

interest that secures repayment of an obligation by placing a lien against real property (the property claimed as collateral). *See id.* "The most important feature of the mortgage relationship is the power of the mortgagee to force the sale of the mortgaged land." 4 Powell on Real Property § 37.36 (2024). This right to foreclose, *i.e.* to force a sale, is generally defined by the terms and conditions of the mortgage. *See, e.g.*, ECF No. 9-2 § 9. Again, put in the statute's terms, foreclosure dispossesses the mortgagor of the property. Although foreclosures may be judicial or nonjudicial, *see* 4 Powell on Real Property § 37.36 (2024), only nonjudicial foreclosures fall within the scope of § 1692f(6). Nonjudicial foreclosures are created and defined by statute. *Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 494 (Minn. 2009) ("[F]oreclosure by advertisement is a purely statutory creation."). Such statutes define requisites for a mortgagee to initiate a nonjudicial foreclosure and procedures the mortgagee is required to follow. *See* Minn. Stat. Ch. 580.

The fighting issue here is whether MidCountry had a "present right to possession" when it foreclosed the property. Because the FDCPA does not define this phrase, courts "look to state law requirements to determine whether there was a present right to possession under the FDCPA." *Hansen v. Santander Bank*, 689 F. Supp. 3d 679, 686 (D. Minn. 2023) (quoting *Revering v. Norwest Bank Minn.*, No. 99-cv-480 (RHK/JMM), 1999 WL 33911360, at *5 (D. Minn. Nov. 30, 1999)). Sandra offers two theories to explain why MidCountry lacked a present right to possession under Minnesota law: (1) Sandra was not in default on the note; and (2) MidCountry violated Minn. Stat. § 580.30, a Minnesota foreclosure-by-advertisement statute. Take each in turn.

6

C

1

Courts agree that until a mortgagor has defaulted, mortgagees lack a present right to possession. *See, e.g.*, *James v. Nationstar Mortg., LLC*, 92 F. Supp. 3d 1190, 1194 (S.D. Ala. 2015) ("[T]he Loan was not in default when Nationstar threatened foreclosure."); *Thomas v. Ocwen Loan Servicing*, No. C17-1222RSM, 2018 WL 3608398, at *5 (W.D. Wash. July 26, 2018). This makes sense; until a mortgagor defaults, the mortgagee has no right to foreclose, and until a mortgagee has a right to foreclose, the mortgagee lacks a *present* right to possession.

A default is defined by the terms of the mortgage. Here, the mortgagor "will be in default if . . . [a]ny party obligated on the Secured Debt fails to make a payment when due." ECF No. 9-2 § 8. Sandra alleges that she was not in default. *See* ECF No. 52 ¶ 95 ("[D]efendants manipulated the loan accounting to reflect that she was in default when she was not in default"); ¶ 118 ("[Defendant] foreclosed her property even thought [sic] she was not in default."); ¶ 174 ("[Sandra] made all of her payments up to and including the February 2022 mortgage payment."). But Sandra's own allegations plainly show that she failed to make payments when payments were due. *See* ECF No. 52 ¶¶ 52–65. Therefore, she was in default as defined by the terms of the mortgage. And her conclusory allegations to the contrary are not plausible.

Sandra does not dispute this basic reading of the Corrected Second Amended Complaint—that she made late payments. *See, e.g.*, Pls.' Mem. in Opp'n at 1. But she

7

contends that MidCountry lacked the right to foreclose, and thus a present right to possession, despite these late payments.

Sandra first argues that § 9 of the mortgage required MidCountry to provide a written notice of default before foreclosing. Pls.' Mem. in Opp'n at 8–10. This is a question of contract interpretation. "[T]he primary goal of contract interpretation is to determine and enforce the intent of the parties." *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003). When contract language is unambiguous, the "language must be given its plain and ordinary meaning." *Minneapolis Pub. Hous. Auth. v. Lor*, 591 N.W.2d 700, 704 (Minn. 1999) (footnotes omitted). Section 9 requires the mortgagee to provide a notice of default before foreclosure "[i]f this is a conventional loan under Minn. Stat. § 47.20." ECF No. 9-2 § 9. The statute defines a "conventional loan" in relevant part as:

> a loan or advance of credit, other than a loan or advance of credit made by a credit union or made pursuant to section 334.011, to a noncorporate borrower in an original principal amount of less than $100,000, secured by a mortgage upon real property . . . and which is not made pursuant to the authority granted in subdivision 1, clause (3) or (4).

Minn. Stat. § 47.20 subdiv. 2(3). Subdivision 1(4) provides in relevant part:

> [B]anks, savings banks, and savings associations organized under the laws of this state or the United States . . . are authorized . . . (4) to make, purchase or participate in such loans and advances of credit secured by mortgages on real property which are authorized or allowed by the Office of Thrift Supervision or the Office of the Comptroller of the Currency, or any successor to these federal agencies.

8

Minn. Stat. § 47.20 subdiv. 1(4).  As Magistrate Judge Schultz explained when denying Sandra's motion to amend, "the mortgage at issue here was made pursuant to the authority granted in Minn. Stat. § 47.20 subd. 1(4); as such, it is not a 'conventional loan,' and the notice requirements in paragraph 9 of the mortgage do not apply."  ECF No. 50 at 13.

Sandra does not dispute that the at-issue mortgage and note were issued under the authority described in Minn. Stat. § 47.20 subdiv. 1(4).  *See* Pls.' Mem. in Opp'n at 8–10.  Rather, she argues that "[t]he way to harmonize the language in paragraph 9 with the tenets of contract interpretation is to conclude that the mortgage's intended definition . . . is enlarging substantive protections for [MidCountry's] loan products."  *Id.* at 9.  Because the note was made to a noncorporate borrower in an original principal amount of less than $100,000, Sandra argues that the note is the type of conventional loan to which the notice-of-default requirement applies.  *Id.*

Sandra's interpretation of the mortgage is inconsistent with the plain language of § 9.  The mortgage states that notice is required only "[i]f this is a conventional loan under Minn. Stat. § 47.20."  ECF No. 9-2 ¶ 9.  The only way to determine if the note "is a conventional loan under Minn. Stat. § 47.20" is to determine if it fits the statutory definition.   Minn. Stat. § 47.20's definition of a conventional loan includes several carve-outs.  *See* Minn. Stat. § 47.20 subdiv. 2(3) ("[O]ther than a loan or advance of credit made by a credit union or made pursuant to section 334.011. . . [w]hich is not insured or guaranteed by the secretary of housing and urban development, by the administrator of veterans affairs, or by the administrator of the Farmers Home Administration. . . which is not made pursuant to the authority granted in subdivision 1, clause (3) or (4).").  There is

no textual basis or context clue to justify excluding any of these carve-outs from the definition incorporated by the mortgage. And Judge Schultz's interpretation makes sense within the context of § 47.20's statutory scheme. Section 47.20 requires "[a] lender making a conventional loan . . . [to include] a provision whereby the lender, if it intends to foreclose, agrees to give the borrower written notice of any default." Minn. Stat. § 47.20 subdiv. 8. It is not surprising that MidCountry would include protections for mortgagors to the extent required by Minnesota law.

Sandra's second default argument proceeds in several steps: for MidCountry to exercise its right to accelerate the loan, it needed to provide clear notice, Pls.' Mem. in Opp'n at 11; until MidCountry accelerated the loan, Sandra had a right to cure any default "absent a notice that it would strictly comply with the contract," *id.* at 12; because Sandra had a right to cure any default, MidCountry "could not disaffirm acceptance of her late payments as a cure," *id.*; and but for MidCountry's impermissible return of her late payments, the default would have been cured, leaving MidCountry without a present right to possession.[3]

As support for this argument, Sandra relies on *Cobb v. Midwest Recovery Bureau Co.*, 295 N.W.2d 232 (Minn. 1980), for the proposition that MidCountry was required to give notice before requiring strict compliance with the terms of the mortgage and note. *See*

---

[3] Relatedly, Sandra suggests that a notice of acceleration is a prerequisite to foreclosure. But the mortgage did not require MidCountry to accelerate the note before foreclosing the property. *See* ECF No. 9-2 § 9 ("Upon default, Lender shall have the right, without declaring the whole indebtedness due and payable, to foreclose against all or any part of the Property.").

Pls.' Mem. in Opp'n at 13.   But *Cobb*'s notice requirement applies to a creditor's repossession of collateral under Minnesota's Uniform Commercial Code.   *See, e.g.*, *McNeill v. Dakota Cnty. State Bank*, 522 N.W.2d 381, 384–85 (Minn. Ct. App. 1994) (applying *Cobb*).   Even assuming that *Cobb* (or similar legal principles) applied to mortgages, it wouldn't change anything here.   *Cobb* involved "the repeated acceptance of late payments" inducing reliance by a debtor.   *Cobb*, 295 N.W.2d at 236–37.   There, a plaintiff made twenty late payments in a row, never making an on-time payment after executing an extension agreement.   By contrast, Sandra alleges that MidCountry accepted one late payment (for December) before commencing a foreclosure on February 1 after no payment was made in January.   ECF No. 52 ¶¶ 52–54, 56–61, 72.   One late payment cannot plausibly be read as similar to a creditor repeatedly accepting late payments.   Therefore, *Cobb* and other unidentified but related estoppel-based principles do not apply to this case.

If MidCountry was required to accept past-due payments until it exercised its right to accelerate the note,[4] Sandra does not plausibly allege she ever cured the default. MidCountry initiated nonjudicial foreclosure before Sandra made her January payment. *See* ECF No. 52 ¶¶ 56–57, 72.   Sandra alleges that she owed $1,118.47 in February 2022 but only paid $1,067.84.   *Id.* ¶¶ 60–61.   In other words, assuming MidCountry was required to accept Sandra's late December and February payments, the default was never completely

---

[4]     Some authority supports this proposition. *See Deutsche Bank Nat'l Tr. Co. on behalf of Bosco Credit II Tr. Series 2010-1 v. Johnson*, No. A16-1315, 2017 WL 1210144, at *5 (Minn. Ct. App. Apr. 3, 2017) ("Until the obligee exercises its rights under the acceleration clause, the obligor has the right to remedy the default by tendering payment of the amount due.").

cured, and therefore MidCountry never lost its present right to possession under Sandra's cure theory.

2

Sandra's statutory-violation theory proceeds in three steps. First, Sandra alleges that MidCountry violated § 580.30, one of Minnesota's foreclosure-by-advertisement statutes. Pls.' Mem. in Opp'n at 18, 22–27. Second, Sandra argues that this violation of § 580.30 renders the foreclosure void. *Id.* at 18, 25. Third, she contends that "[i]f the foreclosure is void, there was no legal entitlement to foreclose or present right of possession." *Id.* at 19.

Minn. Stat. § 580.30 subdiv. 1 states, "[t]he holder of a mortgage shall inform the mortgagor of the amount necessary to reinstate the mortgage within three days of receipt of a request for a reinstatement amount from the mortgagor." Sandra plausibly alleges that MidCountry violated § 580.30 by failing to inform her about the amount necessary to reinstate the mortgage within three days of receiving a request. *See* ECF No. 52 ¶¶ 81–84. And although the Minnesota Supreme Court has never held that a violation of § 580.30 would void a nonjudicial foreclosure, that is a fair prediction of how the Minnesota Supreme Court would rule if faced with the same issue. *Jackson*, 770 N.W.2d at 494 ("If the foreclosing party fails to strictly comply with the statutory requirements, the foreclosure proceeding is void."); *Hunter v. Anchor Bank, N.A.,* 842 N.W.2d 10, 14 (Minn. Ct. App. 2013) ("The *Jackson* opinion suggests that strict compliance is required for all statutes within chapter 580, not just for section 580.02."); *Drews v. Fed. Nat'l Mortg. Ass'n*, 850 N.W.2d 738, 742 (Minn. Ct. App. 2014) ("Absent strict compliance with the foreclosure

12

statute, the foreclosure proceeding is void."). Taft does not seem to dispute Sandra's first two points. *See* Def.'s Reply Mem. [ECF No. 66] at 12.

The debate surrounds Sandra's third contention—that if the foreclosure is void, MidCountry lacked a present right to possession. Sandra identifies no authority to support this proposition. Most cases applying § 1692f(6)(A) to nonjudicial foreclosures consider whether the contractual or statutory prerequisites to initiate foreclosure are met. *See Patton v. Am. Home Mortg. Servicing, Inc.*, No. 1:11CV420-HSO-RHW, 2013 WL 1310560, at \*5 (S.D. Miss. Mar. 28, 2013) ("The Trust had a 'present right to possession of the [P]roperty' because it owned the Deed of Trust and Note at the time of Plaintiff's default."); *Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964, 971 (9th Cir. 2017) ("Plaintiffs alleged that Nationstar threatened to take non-judicial action to dispossess Plaintiffs of their home without a legal ability to do so. Such conduct is exactly what Section 1692f(6) protects borrowers against."); *Lowenstern v. Residential Credit Sols.*, C.A. No. 11-11760-MLW, 2013 WL 697108, at \*6 (D. Mass. Feb. 25, 2013) ("[A] plaintiff must allege that defendant initiated foreclosure proceedings without the requisite possessory interest under state foreclosure law."); *cf. Ruffner v. Quality Loan Serv. Corp. of Wash.*, No. 3:19-cv-01824-HZ, 2021 WL 1414205, at \*5 (D. Or. Apr. 12, 2021) (question of material fact whether mortgagee possessed the note when initiating a nonjudicial foreclosure).

Some cases have held (or discussed in dicta) that a mortgagee lacks a present right to possession if the mortgagee violates a state foreclosure statute's notice requirement. *Manson v. GMAC Mortg., LLC*, 283 F.R.D. 30, 43 (D. Mass. 2012) ("General Laws ch. 244, § 14, is conclusive on the issue: if a violation of the statute occurred then the law firm

defendant in question had no present right to possession, and the FDCPA protections are triggered."); *Barber v. L. Offs. of Thomas J. Burbank*, No. 1:21-CV-539-MJT-CLS, 2023 WL 4281241, at *5 (E.D. Tex. June 1, 2023), *R. & R. adopted,* 2023 WL 4271521 (E.D. Tex. June 29, 2023) ("Either of Plaintiffs' two contentions, if true, could mean that Defendants did not have a present right to foreclose on their home (as Plaintiffs were either not in default or Defendants did not send proper notice of the foreclosure sale), in violation of section 1692f(6)(A) of the FDCPA."); *Shaw v. Bank of Am., NA*, No. 10-CV-11021, 2015 WL 224666, at *4 (D. Mass. Jan. 15, 2015) ("[O]nce Shaw defaulted and BOA provided statutory notice pursuant to Mass. Gen. L. c. 244, § 14, BOA had a right to foreclose.  Because BOA had the right to possess the Property in which it held a security interest, BOA did not violate the FDCPA."); *Hill v. Nationstar Mortg. LLC*, No. 3:22CV108 (DJN), 2022 WL 16950025, at *6 (E.D. Va. Nov. 15, 2022) (holding that a mortgagee could premise her § 1692f(6)(A) claim on mortgagor's alleged failure to comply with Virginia Code § 55.1-321, a state foreclosure statute notice requirement).  The Court's independent research has identified no case discussing a violation of § 1692f(6)(A) predicated on an underlying violation of a non-notice state foreclosure statute or equating a void foreclosure with the absence of a present right to possession.

Given the dearth of authority supporting Sandra's theory, the better answer is that a present right to possession refers to prerequisites, such as Minn. Stat. § 580.02 and the right to a power of sale under the note and mortgage, rather than compliance with other foreclosure-by-advertisement statutory procedures.  If Sandra is correct, then almost every violation of Minnesota's nonjudicial foreclosure statutes would be a violation of

§ 1692f(6)(A).  That seems like a remarkable conclusion unsupported by case law in this District and elsewhere.  And if Congress wanted to make violations of states' nonjudicial foreclosure statutes violations of the FDCPA, it could have expressly done so.

### ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.    Defendant Taft Stettinius & Hollister LLP's Motion to Dismiss [ECF No. 53] is **GRANTED**.

2.    The Corrected Second Amended Complaint is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  October 11, 2024                            s/ Eric C. Tostrud
                                                                  Eric C. Tostrud
                                                                  United States District Court